**In the Matter of Bruce B. BENTLEY, Debtor.**

**Bankruptcy No. 81–02882.**

United States Bankruptcy Court, N. D. Alabama, S. D.

Feb. 9, 1982.

R. B. Jones, Birmingham, Ala., for debtor.

Milton G. Garrett, Birmingham, Ala., Trustee.

Thomas B. Prickett, II, Oneonta, Ala., for Gold Kist, Inc. d/b/a Farmers Mut. Exchange.

William B. Hairston, Jr., Birmingham, Ala., and Bishop K. Walker, Jr., Oneonta, Ala., for First State Bank of Altoona and Dorene Bentley.

Jack Rivers, Birmingham, Ala., U.S. Trustee.

## OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

This Case involves a novel assertion of a security interest in crops grown in 1981 from soybean seed grown in 1980, which seed were subject to a valid and admitted security interest in the 1980 crop.

The Debtor in Chapter 11 is a farmer who grows crops on his own 57½ acres of land and 120 more acres which he leases from others, all in Blount County, Alabama.

1980 was a disastrous year for farmers in that area due to unprecedented heat and drought and crops were generally a failure. To plant his 1980 crop, Debtor entered into a Soybean Production, Marketing and Security Agreement on April 28, 1980, with Farmers Mutual Exchange of Oneonta, Alabama for a named initial indebtedness of $18,000, creating a lien or security interest in the 1980 soybean crops on 152.6 acres of land described therein. Farmers Mutual Exchange transferred all or part of its interest to Gold Kist, Inc. There is no conflict or controversy presented between Farmers Mutual Exchange or Gold Kist, Inc. as secured parties and the landlords on the rented land, and presumably the crop was such a failure that the secured parties made no effort to enforce their rights to any soybeans grown in 1980.

Bruce B. Bentley, the Debtor, filed a Chapter 7 petition on May 8, 1981, which he converted to Chapter 11 on May 22, 1981, prior to the 341 Meeting held June 18, 1981.

Gold Kist, Inc. filed claim marked "secured" for $15,038.99 which represents seed, fertilizer, herbicides, and supplies furnished during Spring of 1980 and which was used directly in the production of the 1980 soybean crop.

The Debtor, as was the custom, reserved and saved back enough seed from the 1980 crop to plant the 1981 crop. He used no fertilizer or other supplies to make the 1981 crop and neither borrowed nor received any advances from creditors during 1981. He did plant the seed from which he harvested the soybeans grown in 1981 and created the funds now in dispute.

The common marketplace for soybeans in that locality is Central Soya of Alabama, Inc. where Debtor marketed his beans. Central Soya upon advice from Gold Kist, Inc. issued three checks in the total sum of $6,441.51 for the beans purchased from Debtor, each payable jointly to Debtor and Farmers Mutual Exchange.

The matter comes before the Court on the Debtor's petition for a rule to the parties named to determine the relative interest of each and to compel Central Soya to pay all the funds represented thereby to Debtor alone. No Trustee has been appointed in this case.

All the parties named appeared and participated in the hearing on the Rule Nisi and Farmers Mutual Exchange, which seems to be the same as Gold Kist, Inc., asserted its claim to all the funds since its debts exceeded the amount of the checks.

Admittedly, the box denoting "proceeds" was not checked and creditor does not rely on the claim to "proceeds" as expressed in the security agreement. The creditor contends that since it had a security interest in the seed that it thereby and consequently owned the plants and crops produced thereby.

This is a novel contention and one of first impression.

The Court expressed to the attorney for the creditor the need for testimony or other scientific proof of his theory. The Court did agree that seed planted customarily produces crops but did not agree that the plants were themselves the seed. The creditor preferred to rely on assumptions of law and did not offer any evidence as a factual issue, except such as was a matter of common knowledge.

## THE ISSUE

Does the security interest in seed continue and exist as a matter of law in plants grown from the seed? Do seed, after planting and germination, loose character as seed? The financial loss to the creditor entitles it to a serious consideration of these issues.

## PRESUMPTIONS OF LAW

The answer to the above questions may be found in the Uniform Commercial Code. The Uniform Commercial Code provides:

§ 9–204. When security interest attaches; after-acquired property; future advances.—(1) A security interest cannot attach until there is agreement (subsection (3) of section 1–201) that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching.

(2) For the purposes of this section the debtor has no rights

(a) in crops until they are planted or otherwise become growing crops, in the young of livestock until they are conceived; . . .

(4) No security interest attaches *under an after-acquired* property clause

(a) to crops which become such more than one year after the security agreement is executed except that a security interest in crops which is given in conjunction with a lease or a land purchase or improvement transaction evidenced by a contract, mortgage or deed of trust may if so agreed attach to crops to be grown on the land concerned during the period of such real estate transactions;
. . .

§ 9–109. Classification of goods; "consumer goods"; "equipment"; "farm products"; "inventory".—Goods are

. . . (3) "farm products" if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, wool-clip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory; . . .

The Code of Alabama as to the rights of *landlords*, Title 35–9–32, provides:

Continuation of lien and attachment to crop of succeeding year.

When the tenant fails to pay any part of such rent or advances, and continues his tenancy under the same landlord, on the same or other lands, the balance due therefor shall be held and treated as advances to him by the landlord for the next succeeding year, for which the original lien for advances, if any remain unpaid, shall continue on the articles advanced, or property purchased with money advanced, or obtained by barter in exchange for articles advanced, and for which a lien shall also attach to the crop of such succeeding year. (Code 1876, § 3469; Code 1886, § 3058; Code 1896, § 2705; Code 1907, § 4736; Code 1923, § 8801; Code 1940, T. 31, § 17.)

The Text of Volume 5A of Benders Commercial Code Service found on Page 9–226 as paragraph 93.07 discusses the limitation of the security interest in crops and after-acquired farm products.

¶ 93.07 After-acquired Farm Products: Limitations

. . . . In keeping with the policy developed in some agricultural states, the Code restricts the security interest in future crops to those which become growing crops within one year after execution of the security agreement, thus protecting the farmer-debtor from "mortgaging" his assets too far into the future [sec. 9–204(4)9(a)]. But the Code forges or allows enough exceptions to this rule to dilute its ultimate effect.

The limitation is accomplished by use of the Code's concept of attachment:

(1) The security interests *cannot* attach to crops until they are planted or otherwise become growing crops [sec. 9–204(2)(a)] and

(2) The security interest *does not* attach to crops which become growing crops more than one year after execution of the security agreement.

This, of course, encourages supplemental security agreements where the crop will clearly be planted over one year after the credit to be secured is extended to the farmer-debtor. For example, the canner who advances seed to the farmer to grow a crop under an output contract with the farmer will want to secure both the advance of or for seed and the ultimate delivery of the crop by a security interest in it. Often the contracts and hence the crops contemplated extend beyond one year. The canner, or any other secured party in like circumstances, has several alternatives open to him:

(1) Execute a new security agreement in advance of each growing season.

(2) Take other collateral, such as farm equipment, under a single, long-term security agreement.

(3) Execute a long-term security agreement with or without other collateral, obligating the debtor to execute periodic supplemental security agreements timed so as to include the crop as security for the antecedent obligations.

The first alternative precludes long-term business certainty since the debtor *has no obligations beyond one season*; the second may afford inadequate security; the third is dangerous in the event of the farmer-debtor's bankruptcy since, except for clearly contemporaneous value, there is a transfer for an antecedent debt by each supplemental security agreement and a possible voidable preference under Section 60 of the Bankruptcy Act. Section 9–108, if effective at all against the provisions of the Bankruptcy Act, would not aid the secured party in this case since a security interest created in the original security agreement could not attach to the belated crop even though conceivably it was acquired by the farmer-debtor in the regular course of business; it may save the security interest, however, to the extent that new credit of whatever kind is given under the supplemental security agreement.

. . . Since provisions in the original security agreement and financing statements covering crops which become growing after one year would be ineffectual, additional financing statements would have

to be filed for each supplemental security agreement.

The Court has not treated the contentions of the secured party as frivolous or utterly unfounded. However, upon consideration of all available references to the subject the Court finds that Farmers Mutual Exchange can demonstrate no claim to the funds due by Central Soya and a separate Order will issue.